UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 01-267 (JMR)
Civil No. 07-1324 (JMR)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND DAMON SMITH,<br>BOP Prisoner #20827-112,<br><br>Defendant. | ) | GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION FOR HABEAS RELIEF PURSUANT TO 28 U.S.C. § 2255 |

The United States of America, by and through its attorneys, Rachel K. Paulose, United States Attorney for the District of Minnesota, and James E. Lackner, Assistant United States Attorney, hereby submits the following response to Petitioner Raymond Smith's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255.

## STATEMENT OF THE FACTS

On October 10, 2002, a jury found Smith guilty of conspiracy to distribute and to possess cocaine and crack cocaine (Count 1) and attempt to possess with intent to distribute crack cocaine (Count 2). The evidence presented at trial against Petitioner Smith was overwhelming.

In June of 1997, the Colorado State Patrol made a traffic stop of Lawrence and Nadine Wade of Minnesota, but quickly suspected the couple was transporting drugs. The officer had the vehicle sniffed

by a trained drug dog and got a hit. T. 437. Two kilograms of crack cocaine were recovered from the vehicle. T. 131. The drugs were packaged in a bag that had the name "Raymond" on it. T. 146, 765, 778-79. The Wades agreed to cooperate. T. 438. They attempted to make a controlled delivery to Norman Toney, the man whom they had agreed to do drug runs for. T. 422-439; T. 129-130. Toney, however, had become concerned with the Wades' delay. T. 693. As a result, he sent the Wades' daughter, Mussette Wade, to the meeting place. T. 149-50, 152, 694-96. Mussette was arrested. T. 130. She also agreed to cooperate (T. 130, 149-150) and was able to provide investigators key information about Toney which led to his eventual arrest in the summer of 1999. T. 758-759.

After his arrest, Toney also agreed to cooperate. T. 700. He named "Cap" as his source of drugs. Toney testified as to how he met "Cap". There had been a "drought" in the usual cocaine supply in Chicago. T. 617. Toney went to Los Angeles to look for a dealer. T. 614-619. They could not locate him. Instead, they were directed by a local woman to a dealer named "Cap." T. 619. They made a purchase of two ounces of crack from Cap and obtained Cap's telephone numbers. T. 619-20. Purchases continued. T. 621. Toney testified to recruiting the couriers and sending them to "Cap" for drugs. T. 609-10, 714-15. At trial, he recounted the various drug runs. T. 614, 635-68, 690-93. He was buying kilograms every three or four weeks. T. 670-71, 703. He personally carried back eight

kilograms. Overall, he purchased 28 to 29 kilograms from "Cap" for about $600,000. T. 703.

Investigators were eventually able to identify Petitioner Smith as "Cap" through investigation and telephone toll records. Toney had described Cap's house on Stanford Avenue in Los Angeles. T. 620-22. Toney also had the telephone number he had used to call "Cap" to set up deals. T. 627. Subscriber information revealed the number belonged to a person named Chavez at 2315 Stanford Avenue South, Los Angeles, California. T. 94, 620, 626. Tolls records confirmed that the address was indeed Cap's residence in that they contained 93 calls to Toney's pager, to Toney's cellular phones, and to locations identified to Toney in Minneapolis. T. 679-686, 783-784.

The telephone tolls records also led investigators to other witnesses who identified Petitioner Smith as "Cap." Linda Jhee testified that she dated a man known to her as Damon Pitts who lived at 2315 Stanford. T. 341-344, 765. She testified that she heard Damon's friends call him "Cap", "Raymond" and "Smith". T. 344. Jhee was shown a photo line-up. T. 345. She confirmed that Petitioner Smith was her ex-boyfriend Damon Pitts.

Photo line-ups were also shown to Toney and his drug couriers. They each identified Smith as "Cap", the source of the drugs (e.g., Jhee (T. 759-61); Mussette Wade (T. 196); Milagro Rosario (T. 550-551); Norman Toney (T. 677-78)). They each also identified

Petitioner Smith in court (e.g., Mussette Wade (T. 173-74); Linda Jhee (T. 344); Nadine Wade (T. 426); Roger Douglas (T. 463); Officer John Harrison (T. 481, 491-92); Officer Ken Aragon (T. 513); Milagro Rosario (T. 548); Kelese Stallings (T. 587); Norman Toney (T. 622); and Juwanda Morris (T. 337-38)). Petitioner Smith himself confirmed his identity as "Cap" when he eventually was arrested. T. 770.

Mussette Wade, Juwanda Morris, Milagro Rosario, and Toney each testified about their repeated meetings with Petitioner Smith (e.g., Nadine Wade, 7 times (T. 422-439); Mussette Wade, 15 to 20 times (T. 157); Juwanda Morris, 7 times (T. 274); Milagro Rosario, at least 5 times (T. 540 et seq.); and Toney, 9 times (T. 622). The couriers testified how they witnessed or assisted in the counting of the purchase money out to Cap in his bedroom. T. 256-58, 286, 300, 304, 543. One courier, Juwanda Morris, had an affair with Petitioner Smith. T. 184-85, 289-90. The drugs were often taped to the courier's body at Smith's house. T. 172-73, 182, 287, 546-47. Sometimes the purchase money to be carried out to Smith was taped to the courier. T. 543. The trial court summarized the effect of the evidence at the time of sentencing. During his statements to the Court, the defendant blamed his attorney for his conviction and claimed that he did not commit the offenses he had been convicted of. The Court responded:

> THE COURT: Mr. Smith, in order to believe you, I would have to believe that everybody in this case is a

> liar. There were women who said they spent time with you and said where they spent time with you, and they said it was in that home. People said they came to that home, and there you were, people identified you all over the place. They identified you as being Cap. And, sir, you are. That was your place, those were your drugs, those were your women, those were your calls, and you did the crime. And you can stand there and tell me you didn't, but I heard the evidence, I saw the evidence, and then you can say that every lawyer who's worked with you has violated or done something terrible to you, and I will tell you, sir, there's no indication of that at all. None. I have read every word that you have said. And I've read every document that you have submitted. And I'm quite familiar with every single thing that you've had to say. Mr. Voss represented you zealously. You had an opportunity to make a different decision, and that's your choice. You took the chance, you took an option, and you tried the case, and you were found guilty. You were found guilty based on evidence that would convince any jury beyond a reasonable doubt, and I will tell you it was full sufficient to make this conviction. Sir, you did the crime. That's where we are.

Sentence T. 21-22.

Smith was sentenced on July 11, 2003. The Court sentenced him to 400 months, or 40 months above the bottom of the appropriate Guideline range (40/IV). Smith challenged his conviction and sentence on direct appeal, arguing that his trial counsel was ineffective and that the district court erred in allowing the government's use of leading questions on direct examination. The Eighth Circuit declined to review the issue of ineffective assistance of counsel, but it reviewed the leading question issue. It found no error and affirmed Smith's conviction and sentence, but did so without prejudice to Smith's ineffective assistance of

counsel claim. See United States v. Smith, 378 F.3d 754 (8th Cir. 2005).

Smith filed a Petition for Writ of Certiari, which was granted as to the Blakely/Booker sentencing issue. Smith's Judgment was vacated and the case remanded to the Eighth Circuit Court of Appeals. On remand, the Eighth Circuit reaffirmed Smith's conviction and sentence and reinstated its Judgment in United States v. Smith, 378 F.3d 754 (8th Cir. 2005), holding that the evidence presented at trial supported the district court's finding of drug quantity attributable to Smith and that the erroneous sentencing of defendant under mandatory guidelines regime was not plain error. His petition for rehearing and rehearing en banc was denied on January 23, 2006, and writ of certiorari was denied on May 30, 2006.

On February 26, 2007, Smith filed this motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. The government opposes the motion and submits the following memorandum in response.

## ARGUMENT

### I. PETITIONER'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE WITHOUT MERIT.

The burden of demonstrating ineffective assistance of counsel is on the defendant. United States v. Cronic, 466 U.S. 648, 658 (1984); United States v. White, 341 F.3d 673, 678 (8th Cir. 2003). A defendant must meet the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). A defendant must first

establish that counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88; see also Wiggins v. Smith, 539 U.S. 510 (2003). This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Strickland v. Washington, 466 U.S. 688, 687 (1984). In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. Because of the distorting affects of hindsight, the highly deferential scrutiny of counsel's performance "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

A defendant must also show that the deficient performance prejudiced the defense. Strickland, 466 U.S. 668, 687 (1984). This requires proving that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been more favorable to the defendant. Id. at 694. A reasonable probability is one "sufficient to undermine confidence in the outcome." Wiggins v. Smith, 539 U.S. 510, 534 (2003). Merely showing a conceivable effect is not enough. When evaluating the probability the result would have been different, a court views the alleged error in light of the totality of all the evidence before the jury to gauge the effect of the error. Kimmelman v. Morrison, 477 U.S.

365, 381 (1986); Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006).

Smith makes numerous ineffective assistance claims in his Section 2255 petition.[1] The claims can be grouped into several categories, and these categories are addressed below.

1. Petitioner's claims that counsel failed to investigate the case

Smith makes a number of arguments that his counsel failed to investigate his case. Under Strickland, trial counsel has a duty to conduct a reasonable investigation or to make a reasonable determination that an investigation is unnecessary. Link v. Luebbers, 469 F.3d 1197, 1203 (8th Cir. 2006). It is the defendant's burden to overcome the strong presumption that his counsel acted reasonably here.

The defendant utterly fails in this regard. He only engages in bald speculation about what defense counsel did not do and what defense counsel might have found. His petition is entirely devoid of the real world specifics necessary for him to prevail.

To succeed on a claim of ineffective assistance of counsel based on alleged inadequate investigation, a petitioner must demonstrate that a more thorough investigation would have revealed evidence which would establish a reasonable probability that the

---

[1] It should also be noted that during the course of the trial and appeal, the petitioner had at least four different attorneys work on this case.

results of the trial would have been different. See Payne v. U.S. 78 F.3d 343, 348 (8th Cir. 1996) (rejecting ineffective assistance claim where, even if counsel's performance was deficient for failing to interview or investigate witnesses, defendant failed to establish that interviewing witnesses would have changed the outcome). See also United States v. Davis, 406 F.3d 505, 510 (8th Cir. 2005); Schone v. Purkett, 15 F.3d 785, 789-790 (8th Cir. 1994).

Here, Smith offers no new evidence or legal arguments to show how he was prejudiced by his counsel's supposed failure to investigate. Instead, he offers only conjecture about what evidence might have been found had his attorney pursued the avenues of investigation suggested by Smith. For example, Smith states that hiring an investigator may have turned up "possible skeletons" in Officer Aragon's closet concerning investigations and alleged police misconduct, or that further investigation may have revealed "evidence with impeachment value". See § 2255 memo, pages 17, 19. He further suggests that his counsel should have issued subpoenas to get police Internal Affairs files. He states "if the allegation of corruption were true, then it provides motive for the officer to be biased against Smith". Id. at 22. However, Smith provides no specific allegations of corruption.

He further speculates the probation officer's files may have revealed exculpatory evidence. Id. Finally, he complains his

counsel failed to investigate other theories of defense suggested by Smith. Those defenses include: investigating Kelese Stallings (his former girlfriend) to see if she had ties to Norman Toney while Smith was incarcerated; investigating a Mexican national as the "possible true supplier" of drugs in this case; and investigating "the possibility that Mr. Smith was the one conveying the money to the Landlord (for his 2315 Stanford residence), but not the true tenant". Id. at 25-26, 28.

Smith's speculation about what evidence might have been found had these avenues of investigation been undertaken simply is not enough to "undermine confidence in the outcome" of his trial. Strickland, 466 U.S. at 694; Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989). As noted earlier, the evidence in this case was overwhelming and is not of the sort to be undermined by mere conjecture.

Nor has Smith met the first Strickland test that his attorney acted unreasonably. "[A]n attorney does not have an obligation to undertake an investigation which, in his reasoned judgment, does not have promise. Harvey v. United States, 850 F.2d 388, 400 (8th Cir. 1988), citing Strickland, 466 U.S. 668 at 691 (1984). Here a review of defense counsel Voss's cross-examination of the government witnesses clearly indicates he had reviewed the reports and other documents and had prepared to put in the defendant's case through cross-examination. At sentencing, this Court itself noted

that Mr. Voss had been a zealous advocate for Smith. Sentencing Transcript (S.T.) 22. The defendant has failed to show otherwise.

2. Petitioner's claims that his counsel failed to prepare or allow Petitioner to testify at trial.

The decision not to testify at trial was a knowing and intelligent waiver made by Smith. The record clearly shows Smith was properly advised of his rights:

> Mr. Voss: And before we began this trial, I had an opportunity to meet with you in the Sherburne County Jail approximately a week before trial, and we spent some time, about an hour, going through the case, and I talked to you about the wisdom of testifying or the lack of wisdom of testifying, depending on your perspective, correct?
>
> The Defendant: Yes, sir.
>
> Mr. Voss: And I told you that if we tried this case it would be my attempt to try your case, that is put your defense in through my cross examination of the government's witnesses, so that you would not have to testify, correct?
>
> The Defendant: Yes, sir.
>
> Mr. Voss: And I told you that as we go through the trial I would gauge this, and let you know what my feelings are about this, correct?
>
> The Defendant: Yes, sir.
>
> Mr. Voss: You and I have conferred on this, correct?
>
> The Defendant: Yes.
>
> Mr. Voss: You understand you have an absolute right to testify if you want to, that nobody can keep you off the stand, correct?
>
> The Defendant: Yes.

Mr. Voss: On the other hand, if you choose not to testify, you understand that the government and the Court cannot comment on your failure to testify to the jury?

The Defendant. Yes, sir.

Mr. Voss: And nobody can force you to testify if you don't want to; do you understand that?

The Defendant: Yes, sir.

Mr. Voss: And you've made a decision; is that correct?

The Defendant: Yes.

Mr. Voss: And you made that decision without any influence or pressure or coercion from anybody, correct?

The Defendant: Yes.

Mr. Voss: What is your decision?

The Defendant: Not to testify.

The Court: You decline to testify?

Mr. Voss: No.

The Court: No. Do you wish to testify?

The Defendant: No, sir.

T. 798-799.

The Court also advised Smith of his rights regarding testifying. T. 793-94. The Court advised Smith that "your lawyer cannot stop you, the prosecutor cannot stop you, and I cannot stop you. So you have that right if it's your pleasure." T. 793. Smith stated he understood his rights and chose not to testify. Id. Thus, Smith cannot complain here that his waiver was unknowing.

This claim also fails because Smith cannot prove prejudice. He

must show how his testimony could have made a difference. See Hines v. United States, 282 F.3d 1002, 1004-05 (8th Cir. 2002); Foster v. Delo, 39 F.3d 873, 877 (8th Cir. 1994) (en banc). He has not done so.

3. Petitioner's claim that he was denied certain witness statements.

Smith claims his various counsel were ineffective because they engaged in a "concerted effort" to keep certain statements from him. His argument fails both on the facts and the law. First, Smith's claims are both factually frivolous and erroneous. The government made Jencks available to the defendant's various counsel long before it was due under 18 U.S.C. § 3500. Because the AUSA handling the case believed there existed significant safety issues for certain witnesses, he requested that defense counsel not show the witness interviews themselves to the defendant.

However, nine and one-half months prior to trial (trial began October 2, 2002), on December 17, 2001, Glenn Bruder, defense attorney for Smith at the time, sent the petitioner a letter which included summaries of those interviews. Thus, for almost a year before trial the defendant was aware of the substance of the government witness statements. Nowhere in his memo does Smith explain how his attorney was ineffective on this point. He does indulge in a speculative statement that the summaries "glossed over" the statement of a supposed exculpatory witness. However, he again falls short of the Strickland standard by failing to provide

any concrete information as to how his case was affected by this supposed error.

This claim also fails as a matter of law. Smith attempts to have the Court impose a novel standard here, one in conflict with Strickland. Based upon United States v. Durham, 287 F.3d 1297 (11th Cir. 2002), the petitioner argues that "the government should be required to show that the defendant's defense was not harmed by the concealment of witness statements by defense counsel . . .". See Petitioner's Memo, page 33. Durham is inapposite as it concerns a direct appeal not a § 2255 petition. This is a highly significant difference. Strickland is the applicable standard, and the defendant fails because he has not met his burden here under either prong of the Strickland test.

4. Petitioner's claim that defense counsel should have brought a motion in limine to preclude the admission of "large amounts of drugs."

Smith claims his trial attorney should have brought a motion in limine to exclude the testimony concerning the large amounts of narcotics at trial. This argument is wrong for several reasons. First, defense counsel at least three times brought a motion to exclude the drug evidence and the Court denied it each time. See T. 266-68; T. 354-56; T. 479-80. Furthermore, and contrary to the defendant's argument, there was significant evidence at trial connecting him with these drugs. The record is overwhelming on this point. See e.g. T. 155-78; 204; 229-38; 281-82; 284; 286-

304; 366-83; T. 427-39; 474-99; among others. Significantly, this was not Rule 404(b) evidence, but rather intrinsic evidence that was part of the charged conspiracy. Therefore, the defendant has failed to meet his burden here.

5. Petitioner's claim that counsel failed to object to the prosecutor's leading questions.

Smith raised this same issue on direct appeal and lost. His attempt to re-argue it here, under an ineffective assistance claim, should be rejected. It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255. United States v. Shabazz, 657 F.2d 189, 190 (8th Cir. 1981), citing Anderson v. United States, 619 F.2d 772, 773 (8th Cir. 1980).

6-8. Petitioner's claim that counsel was ineffective concerning the verdict form, sentencing guideline issues and prior criminal history.

One issue here centers around the Court's application of a two point enhancement under United States Sentencing Guidelines Section 2D1.1(b)(1) for possession of a dangerous weapon. The PSI did not recommend the enhancement. The United States sought its application at sentencing, to which the defendant objected. The Court, after hearing the evidence at trial, determined the enhancement was appropriate. See Sentencing Transcript 13-14.

Petitioner argues that his counsel, during the 2002 trial should have anticipated the Supreme Court rulings in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543

U.S. 220 (2005) and demanded a verdict form to include a jury finding that the defendant use the firearm during the course of the conspiracy.

The petitioner argues his counsel should have been omniscient and, based upon a decision two years in the future, anticipated that the gun enhancement should have gone to the jury. The problem in this analysis is two-fold. First, this is not a correct interpretation of what the law was then and or what the law is now. A sentence under the Guidelines may be enhanced by judicial fact finding, as long as the Court is aware that the Guidelines are advisory not mandatory. Booker, 543 U.S. at 226-27. United States v. Stewart, 462 F.3d 960, 963 (8th Cir. 2006).

While this Court sentenced the defendant prior to the Booker holding that the Sentencing Guidelines are advisory, the petitioner does not argue his sentence should be vacated because the Court sentenced under a mandatory system. Nor could he, as the Eighth Circuit has already made the controlling decision on this same point in this case.

On direct appeal, Smith argued that his sentence should be vacated in light of Booker, based upon judicial fact finding. The Eighth Circuit rejected the argument, specifically finding that the record gave no indication that the District Court would have given a lesser sentence if it had realized the sentencing guidelines were advisory at the time of sentencing. See United States v. Smith,

429 F.3d 1179, 1183 (8th Cir. 2005). That holding is now the law of the case, and his sentence cannot be reconsidered here based upon an argument that the sentence was determined by judicial fact finding.

Furthermore, counsel cannot be found to be ineffective based upon a failure to predict the future. See Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002); Wajda v. United States, 64 F.3d 385, 388 (8th Cir. 1995).

Smith also attempts to re-litigate the issue as to the appropriate drug quantity. He argues that his attorney was ineffective for failing to demand the jury make a specific finding on the amount of drugs. As with the gun issue, he argues his attorney was ineffective for not demanding a jury determination of the quantity. This argument is wrong for several reasons. First, the Court did submit a verdict form with an interrogatory requiring findings as to amounts necessary to invoke the statutory mandatory minimum sentence. T.T. VI, 901-05. Second, for the same reasons as set forth above, including the Eighth Circuit finding that there was no plain error in this Court's sentence, 429 F.3d at 1182, the argument here should be rejected.

Finally, because Smith has already challenged the drug quantity on direct appeal and lost,429 F.3d at 1122, he is procedurally barred from re-litigating the issue here. United States v. Shabazz, 657 F.2d at 190; Anderson v. United States, 619 F.3d at 773.

The petitioner also argues that his counsel was ineffective for failing to get his criminal history score changed prior to sentencing. This argument is equally spurious. He essentially argues his counsel should have gone to the various jurisdictions of his prior felony convictions and attempted to reduce those convictions to misdemeanors. There is no case law whatsoever which holds an attorney ineffective for failing to do so. In fact, the case law in this circuit indicates that attempting to reduce state convictions for the purpose of decreasing a criminal history category in a federal prosecution will not be countenanced. United States v. Martinez-Cortez, 354 F.3d 830, 832-33 (8th Cir. 2004).

II. PETITIONER'S CLAIM FOR "RETROACTIVITY OF BOOKER" IS PROCEDURALLY BARRED BECAUSE THE CLAIM WAS ALREADY DECIDED ON DIRECT APPEAL.

The Eighth Circuit is clear that "claims which were raised and decided on direct appeal cannot be re-litigated on a motion to vacate pursuant to 28 U.S.C. § 2255." See United States v. Shabazz, 657 F.2d at 190; Anderson v. United States, 619 F.2d at 773. The Eighth Circuit, on remand, reviewed Smith's sentencing in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005). It affirmed Smith's conviction and sentence. See United States v. Smith, 429 F.3d 1179 (8th Cir. 2005). Thus, Smith is procedurally barred from raising this issue again here.

III. PETITIONER'S CLAIM THAT THE SENTENCING GUIDELINES ARE UNCONSTITUTIONAL.

Smith argues that the federal sentencing guidelines are unconstitutional because they punish an offense involving crack

cocaine more harshly than powder cocaine. This argument has been repeatedly considered and rejected by the Eighth Circuit. United States v. Patterson, 258 F.3d 788, 791 (8th Cir. 2001). See also United States v. Clary, 34 F.3d 709, 712 (8th Cir. 1994)(citing seventeen 8th Circuit cases finding this argument meritless since 1990).

## CONCLUSION

For the foregoing reasons, the Petitioner's § 2255 motion seeking to vacate, set aside or correct his sentence should be denied and dismissed without the need for an evidentiary hearing.

Dated: May 10, 2007

Respectfully submitted,

RACHEL K. PAULOSE
United States Attorney

s/James E. Lackner
BY: JAMES E. LACKNER
Assistant U.S. Attorney
Attorney ID Number 59298