# United States District Court
# For The District of Minnesota

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>RAYMOND DAMON SMITH,<br>BOP Prisoner #20827-112<br>Defendant. | ) | **Case: 0:01-cr-00267-JMR-FLN**<br><br>**SUPPLEMENTAL AMENDED MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 USC §2255** |

PLACE OF CONFINEMENT: Federal Correctional Complex #2, Victorville, PO Box 5700, Adelanto, CA 92301.

The Defendant, Raymond Damon Smith, (the "Defendant" or "Mr. Smith") by and through his attorney of record, David J. Chapman, of the Chapman Law Firm, hereby petitions this Court to grant the Defendant's Motion to Vacate, Set Aside, or Correct Sentence for all of the legal reasons set forth herein.

## EXPANSION OF THE RECORD

1. The Defendant requests that following examination of this Motion that the Court Order that an evidentiary hearing be held on the allegations contained herein, and that the Court Order that pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings For the United States District Courts, the Defendant will be permitted to expand the record with new evidence.

In the original filing the Defendant has requested that blank subpoenas be issued allowing the Defendant to secure records needed for his prosecution of this petition. The Defendant renews this request and submits that a telephone company has informed the private investigator hired by the Defendant's father that without subpoenas the telephone company will not release telephone records to the investigator. Additionally, the Defendant has been informed that without subpoena, the Los Angeles Police Department will not release information to the Defendant. Ex. at 98. The Defendant has made numerous allegations of ineffective assistance of counsel in his prior petition for post conviction relief under 28 USC §2255. Although the Defendant places great weight on the allegations, the Defendant would also prefer to present evidence to the District Court showing the failures of counsel concerning what could have been discovered and undertaken with competent

counsel. Although the Defendant believes his arguments are otherwise strong, nothing beats hard, concrete evidence.

The Defendant renews his request for an evidentiary hearing on the allegations contained herein, and that the Court Order that pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Defendant will be permitted to expand the record with new evidence. The Defendant wishes to subpoena further telephone and other records that will show his innocence and also will show that he was denied effective assistance of counsel and requests the issuance of subpoenas and time to gather evidence prior to a hearing. Supplementation of the record is important to the Defendant's presentation of the case and is in the interests of justice. The Defendant requests that ten (10) blank subpoenas be issued by the Court clerk to allow the Defendant to secure telephone tolls and other records needed to supplement the record. The Defendant is not currently aware of whether he will require all ten (10) subpoenas, but they should be available for counsel to use as avenues of discovery arise.

The Defendant also requests the Court allow an expansion of the character limit in briefs and allow the Defendant to submit a supplemental memorandum of law on counts II & III.

## COURT OF JUDGMENT

2. **Name and location of court which entered the judgment of conviction under attack:** Judgment of conviction was entered against the Defendant in the United States District Court for the District of Minnesota.

3. **Date of Judgment of Conviction:** The Defendant was convicted on October 10, 2002. Sentencing was held on July 11, 2003, and the Judgment in a Criminal Case was entered on July 17, 2002. After a series of appeals and petitions to the United States Supreme Court, final Judgment was entered and filed in the U.S. District Court for the District of Minnesota on ***February 27, 2006***.

4. **Length of sentence:** The Defendant was sentenced to 400 months imprisonment in the custody of the Bureau of Prisons. He was also sentenced to 5 years of supervised release at the conclusion of his sentence, and was not required to pay a fine based on his inability to pay. The Defendant was sentenced for conviction on both counts of the Indictment at the same time and in this court.

5. **Nature of the offense involved:** Count one charged the Petitioner with Conspiracy to Distribute and to Possess with Intent to Distribute Cocaine Base and Cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 18 U.S.C. § 3237. Count two of the indictment charged the Petitioner with Attempt to Possess with Intent to Distribute Cocaine Base, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 18 U.S.C. §§ 2 and 3237.

6. **Defendant's Plea:** NOT GUILTY. The Defendant was convicted at trial.

7. **Type of trial:** The Defendant had a jury trial.

8. **Whether the Defendant testified at trial:** The Defendant did not testify at trial.

9. **Appeal:** There were two initial Notices of Appeal filed. The first was from the Judgment and Sentence. It was filed on July 17, 2003, with the United States District Court for the District of Minnesota appealing the case to the United States Court of Appeals for the Eighth Circuit. The Docket Number in the case before the US Court of Appeals is 03-2862. The Eighth Circuit affirmed the case in all respects, *See United States of America v. Raymond Damon Smith*, 378 F.3d. 754 (2004), but did not address the issue of ineffective assistance of counsel, instead allowing the Defendant to file a 28 U.S.C. §2255 action on that specific issue. *Id.* At 755. The Court specifically stated that although it affirmed the sentence and conviction, it did so without prejudice to Raymond Smith's ability to bring his ineffective assistance of counsel claim at a later date. *Id.* At 756. Judgment was entered on October 12, 2004.

The second Notice of Appeal dealt with the denial by the US District Court of motions filed by the Defendant. This second notice was filed on October 3, 2003, and was consolidated with the above appeal. The U.S. Court of Appeals case number is 03-3494.

In addition to the ineffective assistance of counsel argument, the Defendant also raised the following issues in his initial appeal: (1) Whether the Government engaged in improper conduct by repeatedly using impermissible leading questions during the direct examination of its own witnesses. The Court denied this appellate issue, but did so without prejudice to the Defendant's right to bring his §2255 request before the court. *Id.* At 756. (2) Whether the trial court erred in failing to correct the Government's use of impermissible leading questions during direct examination of its own witnesses. The Court of Appeals denied this issue.

Following affirmation of the U.S. District Court Judgment, the Defendant filed his first Petition for Writ of Certiorari with the U.S. Supreme Court on December 20, 2004. The U.S. Supreme Court vacated the Judgment of the U.S. Court of Appeals and remanded the case for further consideration in light of *United States v. Booker*, 543 U.S. 220 (2005). The Defendant was granted a right to file a supplemental brief by the U.S. Court of Appeals for the Eighth Circuit. The Eighth Circuit considered the case and affirmed the conviction of the Defendant.

The Defendant raised the following issues in his initial Petition for Writ of Certiorari: (1) Was the Defendant denied the effective assistance of counsel guaranteed by the Sixth Amendment based on Counsel's total failure to investigate the facts of the case, to object to

the government using impermissible leading questions throughout trial, and for failure of counsel to otherwise prepare for trial? (2) Was it prosecutorial misconduct justifying a new trial when government counsel repeatedly used leading questions during direct examination of its own witnesses on substantive and not preliminary matters? (3) Did the trial court err in not acting *sua sponte* to correct the government's repeated use of leading questions in questioning its own witnesses? (4) Did the trial court err in enhancing the Petitioner's sentence on the basis of the trial court's own finding that the Petitioner used a firearm in the course of the conspiracy? (5)

Following the Eighth Circuit decision affirming the U.S. District Court, the Defendant again filed a Petition for Writ of Certiorari with the U.S. Supreme Court on April 21, 2006, and was placed in he docket of the U.S. Supreme Court on April 26, 2006, as docket number 05-10556. The Petition for Writ of Certiorari was denied on May 30, 2006. Thus, Judgment became final in this case with the U.S. Court of Appeals Judgment filed on February 27, 2006.

10. **The Defendant's Appeal:** (a.) Name of the Court: U.S. Court of Appeals for the Eighth Circuit; (b) Result: The remand from the U.S. Supreme Court resulted in affirmation of the U.S. District Court sentence and judgment; (c) Date of result: Final judgment was entered ***February 27, 2006***.

11. **Defendant's other motions or petitions:** Other than the appeal and subsequent petitions to the U.S. Supreme Court, the Defendant has filed no other petitions or motions attacking the judgment and sentence of the court.

12. **Current proceedings:** There are currently no other matters attacking the judgment and sentence of the court pending before the Eighth Circuit U.S. Court of Appeals, the U.S. Supreme Court, or this court. No §2255 motion is pending and no motion has been filed in the past before this or any other court.

13. **Attorneys:** The Defendant was initially represented by Glenn Bruder of the Public Defenders Office. Mr. Bruder was replaced by Mr. Barry Voss, who was privately retained. Mr. Voss represented the Defendant through trial. Upon a finding of guilt the Defendant sought to dismiss Mr. Voss. Mr. Voss was replaced very temporarily by new counsel, who was immediately informed that Mr. David Chapman would replace him. Mr. Chapman represented the Defendant at sentencing, and throughout his entire appeal. Mr. Chapman represents the Defendant in this §2255 motion.

14. **Other sentences:** To the best of the Defendant's knowledge, he has no future sentence to serve after completing the sentence imposed by the judgment under attack.

**ALLEGED INEFFECTIVE ASSISTANCE OF COUNSEL**
**GROUND I**

15. The Sixth Amendment to the U.S. Constitution guarantees the Petitioner the right not only to counsel in criminal proceedings, but to effective counsel.

16. This ground was previously raised before the U.S. Court of Appeals for the Eighth Circuit. The Eighth Circuit declined to consider the issue, but invited the Defendant to raise the issue in a §2255 motion.

17. The Defendant cites to the following failures in the assistance of counsel in this matter:

a) Mr. Voss, wholly failed to hire an investigator to properly investigate the factual basis for defenses that the Defendant had provided to Mr. Voss. The Defendant provided many possible factual scenarios that would have provided the Defendant with a defense, not including the possible ties of a witness to criminal activity.

b) Mr. Voss wholly failed to subpoena records from the Internal Affairs Division of the Los Angeles Police Department that the Defendant alleges would reveal an IA investigation of officers that arrested him for alleged drug activity in 1996, which would have been admissible as impeachment evidence. The Defendant told Mr. Voss this investigation had been carried out and Mr. Voss did nothing to secure the records.

c) Mr. Voss failed to investigate other theories behind the case. Evidence that *someone else* committed the crime is admissible at trial, but Mr. Voss completely and abjectly failed in his responsibility to examine, pursue and present these theories.

d) Mr. Voss wholly failed to prepare the Defendant to testify at trial, despite the Defendant's insistence that he testify, and the Defendant's eventual concession that he would not testify was not knowing, intelligent and voluntary. The Defendant felt that because Mr. Voss has done absolutely nothing to prepare the Defendant, the Defendant would be walking into cross examination blindly.

e) Both Counsel, Mr. Voss and Mr. Bruder, failed to share crucial witness statements with the Defendant, thereby thwarting the Defendant's ability to participate in his defense, as part of the right to confront and cross examine.

f) Mr. Voss failed to file a Motion *in limine* challenging the government's admission of large quantities of narcotics into evidence, even though such a

motion was warranted.

g) Mr. Voss failed to object to the highly prejudicial leading nature of nearly every question the prosecutor asked on direct examination of his own witnesses.

h) Mr. Voss was ineffective in not properly ensuring that verdict forms stated whether or not the jury found the Defendant had used a firearm in the course of the conspiracy.

i) Mr. Voss was ineffective when he did not ensure that the jury was required to be concise in its verdict by determining what type of cocaine was involved in the case and the exact quantity and for failing to make a motion to partially dismiss where his failure led to seriously enhanced penalties for the Defendant.

j) Mr. Voss was ineffective in failing to address Mr. Smith's other convictions in anticipation of a conviction where such convictions led to a higher criminal history score.

## RETROACTIVITY OF BOOKER
## COUNT II

18. The Defendant is entitled to Due Process of Law and Equal Protection of the Law.

19. At Sentencing the Court determined that the Defendant had been involved in a conspiracy involving 1,912 grams of crack cocaine.

20. At Sentencing the Court determined that the Defendant had used a firearm in the course of a drug conspiracy.

21. These factors enhanced the Defendant's sentence.

22. The jury did not find either of these factors beyond a reasonable doubt.

23. The District Court was only required to find these facts by a preponderance of the evidence at sentencing.

24. The Supreme Court now requires such findings to be made by a jury, but more importantly, the law requires such findings beyond a reasonable doubt.

25. The Defendant was denied Due Process of Law by the Court's fact finding based on the preponderance of the evidence standard.

26. If the Court does not apply the reasonable doubt standard then the Defendant is denied the same protection of the law that current defendants are permitted.

**REQUEST FOR RECONSIDERATION AND REDUCTION IN SENTENCE COUNT III**

**The Defendant thoroughly presents his legal argument in this count herein and includes all relevant citations to law and, thus, the Defendant adopts the following section as his supplemental brief on Count III and for the sake of judicial economy will not file an amended brief or memorandum of law unless the court directs that such a brief is desired. The Defendant considers this count a combined brief and request for relief on Count III.**

27. Based on changes in the United States Sentencing Guidelines and also based upon the United States Supreme Court opinion in *Kimbrough v. United States*, 128 S.Ct. 558 (2007), the Defendant requests the Court revisit and revise his sentence by greater than the two level downward shift in the base level for his offense that is recommended by the U.S. Sentencing Commission.

28. The Anti-Drug Abuse Act of 1986 established mandatory minimum penalties for drug trafficking offenses. Pub. L. No. 99-570, 100 Stat. 3207 (1986). (hereafter "ADAA").

29. The ADAA differentiated between types of cocaine, namely cocaine hydrochloride (commonly known as powder cocaine and hereafter referred to as "cocaine") and cocaine base (commonly known as crack cocaine and hereafter referred to as "crack").

30. The ADAA established a mandatory minimum sentencing scheme based on drug quantities. An individual who traffics in 50 grams of crack or 500 grams of cocaine will face a minimum mandatory penalty of 5 years in prison and a person trafficking in 50 grams or more of crack and 5,000 grams of cocaine would face a minimum mandatory term of 10 years in prison. *See* 21 U.S.C. §941 (b). This is commonly called the 100-to-1 ratio.

31. This is the only mandatory minimum adopted by Congress concerning crack and cocaine, but the United States Sentencing Commission went further and adopted a 100-to-1 ratio across the board, extrapolating the sentencing terms for higher quantities of the drugs. United States Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* 3 (May 2007).

32. Sentences were proportionally distributed with crack rendering sentences that were in many cases three to six times longer than the sentences for the same amount of cocaine. *Id.* at 3.

33. Since the inception of the ADAA and also the extrapolation of sentences adopted by the U.S. Sentencing Commission, the 100-to-1 ratio has come under extreme criticism. The judiciary, the criminal justice bar, academics and community groups, and the Sentencing Commission have all stated concern with the ratio. *Id.* at 2; *See Also* Ex. at 29-30. As Senator Joseph Biden stated on February 14, 2008, "Our intentions were good [in drafting the ADAA with its 100-to-1 ratio, but a] lot of our information turns out to be not as good as our intentions." Ex. at 28.

34 On April 18, 2007, the United States Sentencing Commission voted to adopt amendments to the United States Sentencing Guidelines that were designed to address the disparity of sentencing between those defendants convicted of powder cocaine offenses and those convicted of crack offenses. *See* U.S. Sentencing Commission, *U.S. Sentencing Commission Votes To Amend Guidelines For Terrorism, Sex Offenses, Intellectual Property Offenses, And Crack Cocaine Offenses* (News Release, April 27, 2007).

35. On December 11, 2007, the United States Sentencing Commission made the amendments to the Guidelines that deal with the crack and cocaine sentencing disparity retroactive. *See* U.S. Sentencing Commission, *U.S. Sentencing Commission Votes Unanimously To Apply Amendment Retroactively For Crack Cocaine Offenses* (News Release, December 11, 2007).

36. The Sentencing Guidelines are advisory and not mandatory, and must only be given respectful consideration with the Court being required to take into account other statutory factors. *Booker v. United States*, 543 U.S. 220 (2005); *Gall v. United States*, 128 S.Ct. 586, 2007 U.S. LEXIS 13083, *21 (2007) (stating that the Sentencing Guidelines are a starting point for the Court in determining a sentence); *Kimbrough v. United States*, 128 S.Ct. 558, 574 (2007) (indicating that the Sentencing Guidelines are merely a ***rough approximation*** of an appropriate sentence).

37. The United States Sentencing Commission adopts ***guidelines*** on sentencing that take into account the objective big picture with empirical studies and data, whereas it is up to the individual district court to determine what is the subjectively appropriate sentence for a particular Defendant. *Kimbrough v. United States*, 128 S.Ct. at 574 (summing up the U.S. Sentencing Commissions role as painting with a broad brush stroke, whereas the district court judge has an artist's eye for fine detail based on his or her unique understanding of the individual case).

38. Courts are required by 18 USC §3553 (a) to take into account many factors in determining a sentence that is: ". . . necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 USC §3553.

39. The Courts are also required to take cognizance of the: ". . .nature and circumstances of the offense and the history and characteristics of the defendant." 18 USC

§3553 (a)(1).

40. The Court is not bound by any ratio. The 100-to-1 ratio is not implicit in the ADAA. *Kimbrough v. United States*, 128 S.Ct. at 572 (stating that although the ADAA stated mandatory minimums and mandatory maximums, nothing in the ADAA mandated a 100-to-1 ratio for sentences in between the range and the Court declined to adopt an implicit intent on the part of Congress to state such an objective).

41. Congress knows how to express intent and did not have an implicit intent in the ADAA to adopt the 100-to-1 ratio across the board. *Id.* When the intent of Congress is clearly expressed, it must be given effect. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987). Legislative intent is presumed to exist in the express language of the statute. *Id*. Thus, a statute's plain meaning controls absent clear expression of a contrary Congressional intent. *Newman v. Teigeler*, 898 F.2d 1574, 1576 (Fed. Cir. 1990) ("It is well settled law that the plain and unambiguous meaning of the words used by Congress prevails in the absence of a clearly expressed legislative intent to the contrary.") (*citing Mansell v. Mansell*, 490 U.S. 581 (1989)). In applying plain meaning, Congress is presumed to know the state of the law in the area under which they are legislating. *Cannon v. University of Chicago*, 441 U.S. 677, 696-698 (1979); *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 351 (1998) *citing Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) (stating that Congress is presumed to be ". . . aware of existing law when it passes legislation."). Congress is also assumed to expect its statutes to be interpreted to conform to U.S. Supreme Court precedent. *U.S. v. Wells*, 519 U.S. 482, 495 (1997). As Congress said nothing about a 100-to-1 ratio across the board, this Court is not bound by an across the board requirement and as the Supreme Court stated, ". . .the crack/powder sentencing disparity is generally unwarranted." *Kimbrough v. United States*, 128 S.Ct. at 568. The disparity does not meet the objectives and purposes of Congress in sentencing and should not be followed. U.S. Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* iv (May 2002); *See Also* 18 U.S.C. §3553 (a) (stating that the courts are required to sentence in accord with the purposes Congress set forth in §3553 (a)(2)).

42. The Court must only adhere to the statutory mandatory minimum and maximum sentences. *Kimbrough v. United States*, 128 S.Ct. at 572. Granting respectful consideration to the U.S. Sentencing Commission Guidelines, the Court is within its discretion to examine statutory obligations and sentence accordingly. In its December 2007 amendments the U.S. Sentencing Commission adopted a politically palatable beginning to the substantial reduction in sentences inherent in the 100-to-1 ratio issue. *Id*. at 568 (stating that the U.S. Sentencing Commission advises that the disparity in sentences be ***substantially*** reduced). The U.S. Sentencing Commission describes the amendments as a "partial remedy" to the sentencing disparity. U.S. Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* 10 (May 2007). The Court should recognize this and not feel in any way prohibited from descending further on the Defendant's sentence than what the U.S. Sentencing Commission currently advises.

43. The Court should likewise not feel inhibited by Congress's disapproval of a 1-to-1 ratio in its 1995 rejection of the U.S. Sentencing Commission's recommended changes to the Guidelines. *Id.* at 572 (stating that ". . . the sentence imposed for trafficking in a quantity of crack cocaine should ***generally*** exceed the sentence imposed for trafficking in a like quantity of cocaine."). Congress's approval of other amendments that did not comport with a 100-to-1 ratio neutralizes concern that Congress rejected the 1995 amendments because it wanted to adhere to a 100-to-1 requirement. *Kimbrough v. United States*, 128 S.Ct. at 572-573.

44. Although the U.S. Sentencing Commission adopted an amendment recommending a two (2) level downward departure from the Guideline level under which the Defendant was sentenced for his conviction of a crime involving crack, the mandates of 18 U.S.C. §3553 (a)(2) will not have been considered through simple rote application of that ***recommended advisory*** guideline adjustment, which the Commission itself called a ***partial*** solution. U.S. Sentencing Commission, *Report to Congress: Cocaine and Federal Sentencing Policy* 10 (May 2007).

45. The Defendant offers that the Court must consider the nature and circumstances of the offense ***and the history and characteristics of the defendant.*** 18 U.S.C. §3553 (a)(1). The Court sentenced the Defendant under a mandatory guideline scheme. Amendments have now been adopted to ameliorate sentencing disparity under an advisory guideline system. The Defendant offers that the Court must consider the change in the sentencing guidelines, but must examine the Defendant's sentence with a much wider scope. The mandatory guidelines and a widely disparate sentencing scheme affected the Court's overall sentence in the Defendant's case. The Court should alter the Defendant's sentence downward based upon the effect the guidelines and the mandatory disparity had upon the Court's original sentence. The Defendant offers that the Court should go further than a mere two level downward alteration of the base offense level.

46. The Defendant offers for the Court that even though the Defendant was found guilty of a cocaine base offense, the Government never proved this was smokeable crack cocaine. *See U.S.A. v. Brisbane,* 367 F.3d 910 (D.C. Cir. 2004) (finding that cocaine base means smokable crack and that the Government had to prove the cocaine base was smokable). Given the failure of the Government to prove smokeability, the Court should be more reluctant to simply accept the need for a crack versus cocaine disparity in this case.

47. The Defendant also offers that when the Court felt constrained by the 100-to-1 approach under the mandatory sentencing guidelines, the Court applied a departure based on a firearm being present in the commission of the crime, but that the firearm was present in proximity to cocaine and marijuana and not cocaine base. App. at 7. This fact once again illuminates the complete injustice in the 100-to-1 disparity and the need to go further than the U.S. Sentencing Commission did in its December 2007 amendments. A person possessing a gun in connection with cocaine and marijuana can later see a tremendous

enhancement of their crack sentence on the basis of the firearm. With the broad horizon of sentencing in this case having been affected to such a degree with the U.S. Sentencing Commission amendments, and the overall public outcry against the 100-to-1 injustice, the Court needs to look at everything in determining what a suitable sentence is—including how the gun should affect the entire mix.

48. One goal in sentencing is the need to rehabilitate the offender and the length of time is partially tailored toward that goal. In this case the Court looked at the characteristics of the Defendant and concluded that the Defendant required a substantial sentence based on the then mandatory guidelines and 100-to-1 ratio. However, as was raised in the sentencing, the Defendant was already placing his life on track and in line with society's expectations when this case arose. He was seeking higher education when this case arose. App. at 43 & 80-82. He had a job. App. at 44-50. Since his incarceration he has used his time constructively to better himself and to further his knowledge and value to society. App. at 34-42 & 51-79 & 83-91. His efforts hardly support the fears Congress had over crack cocaine that led to the 100-to-1 ratio. Mr. Smith is not beyond redemption and the injustice of the disparate sentence he received based on the 100-to-1 ratio and the mandatory nature of the guidelines must be undone.

49. At sentencing it was reported in the PSI that: ". . .[t]he defendant's criminal history category may significantly overrepresent the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes. A downward departure may be warranted pursuant to §4A1.3." Given the Defendant's efforts prior to arrest and his efforts since incarceration, the PSI was absolutely correct. However, this is the view in light of the changes in the Defendant and the new amendments. Given the seriousness with which Congress and the U.S. Sentencing Commission dealt with crack cocaine, the Court understandably did not depart and did not find the criminal history to over represent the seriousness of the crime—the Court actually slid the sentence up from the bottom of the guideline range on the basis of the firearm issue. In light of the new approach to the 100-to-1 ratio and the discounting of the concerns Congress had in originally treating crack so harshly, and the fact that the sentencing guidelines are no longer mandatory, the Court should once again consider the language of the PSI in determining whether a mere two level downward shift in the base offense level is sufficient to undo a tremendous disparity in sentences between crack and cocaine offenses. The U.S. Sentencing Commission does not believe that the original reasons for disparate sentences support such severe sentences and Mr. Smith could serve as a prime exhibit that assumptions concerning the need to treat crack so much more severely are flat out wrong.

50. Sentencing is a complex interaction of dependent factors. Sentencing under a system where the guidelines are merely ***advisory*** bears added complexity because the Courts have more latitude to consider the individual factors in the Defendant's case. A shift in attitude concerning the 100-to-1 ratio adds another issue to the mix. A court cannot simply apply a downward shift in the base offense level mechanically, especially in a sentencing case with as many factors as this one. Changing one factor changes the landscape of

sentencing in a particular case. The Court must revisit the ***entire broad picture of sentencing*** in this ***complicated case*** and determine whether a two level downward adjustment is sufficient to meet the statutory objectives in ***this particular*** Defendant's case, which this Court is ***uniquely equipped to address*** given the Court's experience with the Defendant and the facts.

51. Had the Defendant been responsible for a quantity of cocaine equal to 1.9 kilograms, the base offense level would have been 26 and not 38, and would have rendered a sentencing range of 92-115 months instead of the 324 to 405 months that the Defendant fell in under the disparate 100-to-1 ratio. The Defendant was sentenced to 400 months or 33.3 years in prison, whereas the upper level sentence at a level 26 would be 9.58 years. In this case the Defendant's entire life evaporated because of the disparate crack sentencing. Keeping in mind the mandatory minimum sentence of ten (10) years under 21 U.S.C. §841 (b)(1)(A), the Court should impose a sentence greater than ten (10) years, but less than the level 36 that would be called for under the revised guideline range.

52. In a principle as old as the Republic, Sir William Blackstone stated that our criminal justice system must be: "***always conformable to the dictates of truth and justice***."4 Wm. Blackstone Commentaries on the Laws of England 3 (9th Ed. 1783). The vast disparity of cocaine sentences based upon the old notions of the crack epidemic that did not come to pass are unjust and reflect badly upon our criminal justice system and foster disrespect for the law. As the U.S. Supreme Court has stated, ". . . 85 percent of fedendants convicted of crack offenses in federal court are black thus the severe sentences required by the 100-to-1 ratio are imposed 'primarily upon black offenders.'" *Kimbrough v. United States*, 128 S.Ct. at 568. This inequity is not the product of overt racism, but it is common knowledge that the cheap crack cocaine is more prevalent in the poorer black communities. This Defendant is African-American and although not a direct effort to target African-Americans, disrespect and distrust of the legal system can only be nurtured in the African-American community when our citizens see that crack is dealt with more severely than the powder cocaine more prevalent in the white community. Thus, the Court should view this as both a systemic injustice in sentencing that is present in sentences that cross racial lines, and an experiential racial injustice which only time and facts have taught us. The U.S. Sentencing Commission has recognized the presence of both. Laws gain their validity through the consent of the governed and to preserve the consent of the governed our government must avoid extreme inequitable injustice when possible and corrected it when it occurs and is found.

53. Mr. Smith offers that the court should revisit his sentence and adopt a new lower sentence based upon all of the foregoing.

<u>REMEDY</u>

54. Under Count I the Petitioner seeks an Order from this Court vacating the Judgment on the basis that the Defendant was denied effective assistance of counsel.

55. Under Count II the Defendant is requesting he be resentenced.

56. Under Count III the Defendant is requesting a newly deduced sentence term derived after examination of all facts and changes in the law.

Respectfully Submitted this 22nd day of February 2008.

David J. Chapman (Attorney #05531)
Chapman Law Firm
118 Broadway, Suite 806
Fargo, ND 58102-4949
(701) 232-5899
FAX: (701) 232-6470
dchapman@americanlibertylaw.com
www.americanlibertylaw.com
Attorney for Petitioner