UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
01-CR-267 (JMR)
07-CV-1324 (JMR)

United States of America )
)
v. ) ORDER
)
Raymond Damon Smith )

Petitioner moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docket No. 160]. He also moves to expand the record, and for an evidentiary hearing [Docket No. 168]. All motions are denied.

I. Background

On June 1, 1997, drug couriers Lawrence and Nadine Wade drove from California to Minnesota with nearly two kilograms of crack cocaine. They were stopped by a Colorado state patrol officer who found the drugs. They immediately agreed to cooperate with law enforcement, and attempted to make a controlled delivery of the drugs to Norman Toney, a Minnesota dealer. Toney was suspicious because the couriers had been delayed, so he sent the Wades' daughter, Mussette, to meet them. She was arrested, and agreed to cooperate against Toney.

Toney was arrested in 1999. He, in turn, agreed to cooperate against his California supplier, petitioner, Raymond Damon Smith, whom he knew as "Cap." In September, 2001, a grand jury indicted petitioner on one count of conspiracy to distribute, and one count of attempt to distribute, cocaine. 21 U.S.C. §§ 841, 846; 18

U.S.C. §§ 2, 3237. The conspiracy allegedly involved in excess of 50 grams of crack and 5 kilograms of cocaine distributed over a period of 28 months; the attempt involved the crack seized from the Wades.

Petitioner was arrested in California and brought to Minnesota. Glenn Bruder was appointed to represent him on November 14, 2001. Bruder filed numerous pretrial motions on petitioner's behalf seeking, among other things, discovery, dismissal of the indictment, and suppression of evidence. The government provided Bruder with witness statements, but asked that they not be shown to petitioner out of concern for the witnesses' safety. Bruder agreed not to show the statements to petitioner, and instead sent him a summary thereof in December, 2001.

Petitioner, being dissatisfied with Bruder's representation, retained an experienced local defense lawyer, Barry Voss, who was substituted for Bruder on January 18, 2002.

The case was tried to a jury in October, 2002. Numerous witnesses testified that "Cap" was the source of the drugs. See T. 173-74 (Mussette Wade); T. 344 (Linda Jhee); T. 426-28 (Nadine Wade); T. 548 (Milagro Rosario); T. 622 (Norman Toney).[1] Toney testified at length about the scope and duration of drug dealing arrangements with petitioner. See T. 633-677. Hotel and telephone

[1]This Order refers to the trial transcript as "T." and the sentencing transcript as "S."

records corroborated the testimony, establishing frequent contact between petitioner, Toney, and the drug couriers. See e.g., T. 627-28. Petitioner's landlord testified that petitioner lived at 2315 Stanford Street, Los Angeles, California, the residence where drug couriers testified they delivered cash and picked up drugs. T. 465. Toney testified to purchasing 28 to 29 kilograms of crack from Cap between October, 1995, and January, 1998, at a total cost of about $600,000. T. 703.

The government also presented testimony from two Los Angeles police officers who arrested petitioner in November, 1996. While driving along Stanford Street, Officer Harrison saw petitioner standing in his front yard with a brick of cocaine in his hand and a pistol in the waistband of his pants. Officer Harrison chased and arrested petitioner. T. 474-492. Meanwhile, Officer Aragon searched petitioner's home and found drugs, a loaded gun, a scale, a bulletproof vest, a surveillance camera, and over $3,000 in U.S. currency. T. 493-95, 512-14. Petitioner was not charged with any crime in relation to this arrest. T. 788.

Voss sought to impeach Officer Aragon. He made an offer of proof to the Court regarding a Los Angeles Police Department internal affairs investigation of the Rampart CRASH Unit. Officer Aragon testified that his unit, the Newton CRASH Unit, was separate, and that he had no open internal affairs complaints. Voss asked Aragon about a complaint by petitioner's brother that

Aragon had stolen a Rolex watch. Aragon acknowledged the brother’s complaint, but testified the brother did not appear for a polygraph test. Aragon did not recall whether internal affairs had investigated this complaint, but thought that if it had, the complaint was determined to be unfounded. T. 560-63. The Court found the offered proof irrelevant and denied Voss’s motion to present it.

Petitioner did not testify or call any witnesses. Instead, Voss vigorously cross-examined each government witness, emphasizing inconsistencies with prior statements, as well as their incentive to lie. At closing, Voss argued that petitioner was “set up” by Toney, T. 833, and suggested the government’s witnesses lied under oath. T. 839.

On October 10, 2002, the jury convicted petitioner on both counts. After the verdict was read, petitioner expressed dissatisfaction with Voss’s representation. Voss requested, and was allowed, to withdraw prior to sentencing. Petitioner’s current counsel was appointed on February 11, 2003.

On July 11, 2003, the Court sentenced petitioner to 400 months’ imprisonment, followed by five years’ supervised release. Petitioner timely appealed his conviction and sentence, arguing, among other things, that his trial counsel was ineffective. On August 4, 2004, the Eighth Circuit Court of Appeals affirmed the conviction, but declined to reach the merits of petitioner’s

ineffective assistance claim, reasoning that the record was undeveloped, and the claim would best be heard in a § 2255 petition. United States v. Smith, 378 F.3d 754, 755 (8th Cir. 2004). Petitioner timely sought certiorari review.

Meanwhile, the Supreme Court issued its opinion in United States v. Booker, 543 U.S. 220 (2005). The Supreme Court vacated petitioner's sentence and remanded for further consideration in light of Booker. 543 U.S. 1136 (2005). Upon remand, the Eighth Circuit found no Booker error, and reinstated its earlier judgment affirming petitioner's conviction. United States v. Smith, 429 F.3d 1179, 1180 (8th Cir. 2005). The Supreme Court denied certiorari on May 30, 2006. 547 U.S. 1169 (2006).

The instant § 2255 motion followed, timely filed on February 26, 2007.

## II. Analysis

### A. Ineffective Representation

Petitioner claims Bruder and Voss provided constitutionally inadequate representation. To prevail on such a claim, petitioner must show both that counsel's performance was deficient, and that he suffered actual prejudice as a result. Strickland v. Washington, 466 U.S. 668, 687 (1984). To show prejudice, petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one

"sufficient to undermine confidence in the outcome." Id. Petitioner must show counsel's deficient performance rendered the "result of the trial unreliable or the proceeding fundamentally unfair." El-Tabech v. Hopkins, 997 F.2d 386, 389 (8th Cir. 1993).

If petitioner cannot show prejudice, the Court need not address counsel's competence. See Williams v. United States, 452 F.3d 1009, 1014 (8th Cir. 2006). The Court, accordingly, addresses prejudice first. In determining whether petitioner was prejudiced by alleged deficiencies of counsel, the Court considers the totality of the evidence before the jury. Id. at 1013. Where the evidence of guilt is substantial, it is difficult for a defendant to demonstrate prejudice. See Evans v. United States, 200 F.3d 549, 551 (8th Cir. 2000).

1. Witness Statements

Petitioner claims both Bruder and Voss provided ineffective assistance in failing to show him "crucial" statements by the government's witnesses prior to trial. Petitioner's Memorandum at 32. He suggests Lawrence Wade's statement was exculpatory, though neither side called Wade to testify at trial. Id.

This claim fails because petitioner can show no prejudice. Months before trial, Bruder summarized the substance of the witnesses' statements for petitioner. The statements themselves were not admitted into evidence; rather, the government's witnesses testified in person, and were subject to rigorous cross examination

by petitioner's counsel. The record reflects Voss was well aware of the witnesses' prior statements, and used them repeatedly to impeach the witnesses. See, e.g., T. 246-49 (Mussette Wade), T. 306-13 (Juwanda Morris), T. 446-48 (Nadine Wade).

The Sixth Amendment's Confrontation Clause requires no more. The Constitution guarantees petitioner "only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." United States v. Owens, 484 U.S. 554, 559 (1988) (internal quotations and emphasis omitted).[2]

From a substantive standpoint, petitioner fails to show any facts to which Wade would have testified, or how they would have exculpated him. Wade's ability to exonerate petitioner is sheer - and unsupported - speculation. A defendant is not prejudiced by his counsel's failure to call witnesses, absent some showing the witnesses' testimony would have been favorable. See United States v. White, 341 F.3d 673, 680 (8th Cir. 2003) (defendant not prejudiced where uncalled witnesses would have presented contradictory or inculpatory testimony). Given the overwhelming evidence against petitioner, there is no basis to conclude Wade's

---

[2]Petitioner's reliance on United States v. Durham, 287 F.3d 1297, 1308 (11th Cir. 2002) is unavailing. The case has nothing to do with witness statements. In Durham, a direct appeal, the Eleventh Circuit held the district court had not made sufficient findings of fact to justify restraining defendant with a stun belt during his trial. Id. at 1300. Neither the facts nor the law of Durham have any bearing on petitioner's case.

testimony would have changed the outcome at trial, or that its absence rendered the proceedings fundamentally unfair. No prejudice has been shown.

Accordingly, counsel's refusal to show petitioner witness statements prior to trial does not amount to ineffective representation.

2. Failure to Investigate

Petitioner asked Voss to hire an investigator and to subpoena internal affairs records from the Los Angeles Police Department pertaining to Officer Aragon. He also wanted Voss to investigate whether someone else committed the crime. Voss opted against doing so. According to petitioner, these decisions constitute constitutionally deficient representation.

Petitioner is wrong. To show prejudice from counsel's purported failure to investigate or consult with him, the petitioner must produce examples of "evidence counsel could have discovered through further investigation or . . . exculpatory information [petitioner] could have conveyed to counsel through further consultation." Neal v. Acevedo, 114 F.3d 803, 806 (8th Cir. 1997); see also Sanders v. Trickey, 875 F.2d 205, 210 (8th Cir. 1989). He must also show that the undiscovered evidence would have been sufficient to undermine confidence in the outcome at trial. Payne v. United States, 78 F.3d 343, 348 (8th Cir. 1996).

Petitioner has failed to make this showing; indeed, he has

failed to try. For example, he has not specified any additional facts an investigator would have discovered. Petitioner speculates investigation might have revealed Toney knew petitioner’s former girlfriend, Kelese Stallings, who testified at trial. He speculates further that frequent telephone calls to Toney from his house might have been made by Stallings, and implies the entire case against him might have been concocted by Toney and Stallings. He offers no evidence to support his claims.

Nor is it clear how the outcome at trial would have been affected by evidence of a link between Toney and Stallings. Stallings’ testimony was limited to describing her relationship with petitioner and identifying his house; she did not connect him to drugs, guns, or to any of the other witnesses. On the other hand, many other witnesses connected petitioner to his residence, to Toney, and to the drugs. Even if investigation might have turned up evidence to impeach Stallings or connect her to Toney, these facts would not have affected the outcome at trial.

Similarly, there is no hint as to what petitioner expected counsel might find in the Los Angeles Police Department internal affairs files, or how that information would have made Voss’s offer of proof any more compelling or relevant. During the offer, Officer Aragon acknowledged that petitioner’s brother once complained Aragon had stolen a watch. T. 563. Aragon testified the brother was invited to take a polygraph examination, but

declined. Aragon did not recall whether internal affairs had investigated the incident, but testified that if it had, it determined the complaint was unfounded. Id.

Petitioner claims his brother's complaint against Aragon gave the testifying officers "every reason to have it in for [petitioner] and his family." Pet. Mem. at 22. This is sheer speculation, with no record support. Even assuming - and the Court does not so assume - the internal affairs files contained evidence of an open investigation or a well-grounded complaint against Officer Aragon, that evidence would have been useful only to impeach the officer. Other substantial evidence connected petitioner to the drug conspiracy.

At trial, the government presented overwhelming evidence showing petitioner had extensive direct contact with Norman Toney and others in the drug conspiracy. Numerous witnesses identified petitioner in court and testified they personally gave him cash and received large quantities of drugs in return. Voss had access to the extensive discovery provided by the government, including this testimony.

When the facts supporting a potential line of defense are known to counsel, the need for further investigation may be considerably reduced. See Neal, 114 F.3d at 806. Counsel has no obligation to pursue a fanciful theory of defense that is unlikely to succeed at trial. See Mann v. Thalacker, 246 F.3d 1092, 1099

(8th Cir. 2001) (in light of evidence implicating defendant, counsel who declined to pursue defense that “someone else committed the crime” not ineffective).

Faced with the government’s case, Voss argued Toney was the big player, giving Toney and his drug couriers an interest in implicating petitioner to reduce their own sentences. Petitioner may well have preferred a different defense - for example, that he was being framed, or that someone else was Toney’s “true” supplier, see Pet. Mem. at 26. But there is no showing that further investigation would unearth any facts supporting such a defense. At best, he alleges investigation might have uncovered evidence that might have impeached two of the many witnesses against him. This is not sufficient.

In light of the overwhelming evidence of guilt, and petitioner’s complete failure to show what an investigation would have revealed, the Court concludes he cannot show any prejudice from Voss’s alleged failure to investigate.

3. Failure to File Motion in Limine

Petitioner argues Voss provided inadequate representation by failing to file a motion in limine challenging the admission of the drugs. This claim is simply wrong; Voss brought at least three motions to exclude the drugs, each of which was denied. T. 266-68, 354-56, 479-80.

There is no showing that an additional motion would have been

granted. Absent such a showing, petitioner cannot demonstrate a reasonable probability that the outcome at trial would have been different. Patterson v. United States, 133 F.3d 645, 648 (8th Cir. 1998); Williams v. Locke, 403 F.3d 1022, 1026 (8th Cir. 2005) (no prejudice from counsel's failure to bring meritless Fourth Amendment suppression claim). Contrary to petitioner's assertion, extensive evidence connected him to the drugs. See, e.g., T. 155-78, 229-38, 281-304, 427-39, 474-99. Petitioner's claim fails.

4. Failure to Prepare to Testify

Petitioner chose not to testify at trial. The record reflects that, before the close of evidence, both Voss and the Court advised him of his absolute right to testify. T. 793, 798-99. The Court specifically advised petitioner that if he wished to testify, "your lawyer cannot stop you, the prosecutor cannot stop you, and I cannot stop you." Id. at 793.

Petitioner was asked:

> MR. VOSS: And you've made a decision; is that correct?
>
> THE DEFENDANT: Yes.
>
> MR. VOSS: And you made that decision without any influence or pressure or coercion from anybody, correct?
>
> THE DEFENDANT: Yes.
>
> MR. VOSS: What is your decision?
>
> THE DEFENDANT: Not to testify.

THE COURT: You decline to testify?

MR. VOSS: No.

THE COURT: No. Do you wish to testify?

THE DEFENDANT: No, sir.

T. 799.

Petitioner now claims his decision arose not from a knowing and voluntary waiver, but because Voss had not prepared him for cross-examination. The Court disagrees. The trial transcript reflects petitioner clearly understood and waived his rights.

Nor can petitioner show prejudice under Strickland. He does not set forth what he would have testified, or how it would have affected the evidence as a whole. Accordingly, he cannot show his failure to testify affected the outcome at trial. Hines v. United States, 282 F.3d 1002, 1004-05 (8th Cir. 2002). Without such a showing, there is no prejudice, and no ineffective representation.

5. Failure to Object

Petitioner claims Voss provided inadequate representation because he failed to object to the government’s leading questions. This issue was raised and resolved on direct appeal. Smith, 378 F.3d at 755. Accordingly, petitioner may not raise it again in a § 2255 petition. See English v. United States, 998 F.2d 609, 612 (8th Cir. 1993).

Even considered on its merits, petitioner’s argument fails. Petitioner points to several instances where counsel failed to

object to leading questions. Pet. Mem. at 38-41. The questioning concerned Mussette Wade's initial statement to law enforcement, which was inconsistent with her trial testimony, see T. 229-31; Juwanda Morris' halfhearted identification of petitioner, at T. 337-38; and Linda Jhee's inconsistent prior descriptions of petitioner, at T. 401-02. The government also repeatedly characterized witnesses' trips as "drug runs" without objection. Pet. Mem. at 39.

Once again, petitioner can show no prejudice. Voss frequently objected to the government's questions, leading and otherwise, with mixed results. See, e.g., T. at 218, 276, 295-96, 363-64, 468, 483. This Court is familiar with Federal Rule of Evidence 611. There is no reason to conclude that changing the mode of inquiry would have outweighed the substantial evidence against petitioner.

Petitioner cannot show prejudice. Accordingly, counsel's failure to object was not ineffective.

6. Failure to Anticipate Change in Law

The jury at petitioner's trial was asked to find drug quantities sufficient to trigger statutory mandatory minimum sentences, T. 809-10, 901-05, V. 3, but was not asked to find a specific quantity of drugs. Based on the jury's finding and the evidence at trial, the Court found petitioner responsible for 1,912 grams of crack cocaine. S. 2-3. The jury was not asked to find whether petitioner used a firearm in connection with the

conspiracy. Based on the evidence at trial, the Court found he did. S. 13-14.

Petitioner now argues counsel was ineffective because he failed to insist that factual findings of both the specific drug quantity and the use of a firearm be made by the jury, in anticipation of the Supreme Court's future rulings in Blakely v. Washington, 542 U.S. 296 (2004) and United States v. Booker, 543 U.S. 220 (2005). Petitioner is wrong.

Trial counsel is not ineffective for failing to anticipate a future development in the law. Parker v. Bowersox, 188 F.3d 923, 928 (8th Cir. 1999). When petitioner went to trial, the United States Supreme Court had decided Apprendi v. New Jersey, 530 U.S. 466 (2000), which held the Sixth Amendment required facts (other than a prior conviction) resulting in a sentence more severe than the statutory maximum to be proved to a jury beyond a reasonable doubt. Id. at 490. The Eighth Circuit had applied Apprendi to drug quantities, see United States v. Nicholson, 231 F.3d 445, 453 (8th Cir. 2000), so petitioner's jury was asked to make limited findings as to the drug quantity.

Ultimately, the United States Supreme Court extended Apprendi to sentences under the Federal Sentencing Guidelines in the cases of Blakely and Booker. Significantly, Booker does not require juries to find every fact that may lengthen a defendant's sentence; rather, judges may find facts as long as they are aware the

Guidelines are not mandatory. Booker, 543 U.S. at 226-27; United States v. Stewart, 462 F.3d 960, 963 (8th Cir. 2006).

Booker was decided while petitioner's writ for certiorari was pending, and the Supreme Court remanded to the Eighth Circuit for consideration of Booker issues. The Eighth Circuit concluded petitioner's Booker claim was not preserved, and found no plain error in petitioner's sentence. Smith, 429 F.3d at 1181. The Eighth Circuit specifically found no indication in the record that this Court would have given a lesser sentence had it known the Guidelines were advisory. Id. at 1183.

To the extent petitioner seeks to relitigate the appropriate drug quantity, this Court is barred from considering the issue because it was decided on direct appeal. English, 998 F.2d at 612. In any event, petitioner has made no showing how the result at trial would have been different if counsel had demanded that the jury, rather than the Court, find these facts.[3] Absent prejudice, counsel's failure to do so is not ineffective.

7. Sentencing

Petitioner had several prior convictions which placed him into criminal history category IV at sentencing. S. 17. Petitioner subsequently obtained a reduction in one conviction - it is not

[3] There is no merit to petitioner's contention that a finding of "smokeable crack" is required. The Eighth Circuit has not adopted such a rule. United States v. Brown, 499 F.3d 817, 823 (8th Cir. 2007). The government need only establish that a substance is cocaine base. Id.

clear which one - from a felony to a misdemeanor. Pet. Mem. at 45-46. Petitioner now claims Voss failed to "address" his other convictions in advance of sentencing so as to reduce his criminal history score. Pet. Mem. at 45.

Petitioner cannot show prejudice. If a sentence is set aside or modified for reasons unrelated to innocence or errors of law, the sentencing court must count it in defendant's criminal history. See United States v. Martinez-Cortez, 354 F.3d 830, 832-33 (8th Cir. 2004). There is no suggestion that petitioner was innocent of his earlier convictions, or that any error of law justified setting them aside. Even if counsel succeeded in getting the sentences reduced, the Court would nonetheless have been obliged to count the original sentences toward his criminal history score.

The Court concludes petitioner cannot show prejudice as to any of his counsel's allegedly deficient conduct. He was convicted because the facts showed he did the crime. Accordingly, petitioner's claims of ineffective assistance fail.

B. Booker Retroactivity Claim is Procedurally Barred

Petitioner has filed a Supplemental Amended Motion under § 2255 seeking an evidentiary hearing and raising additional grounds to vacate his sentence. As discussed above, petitioner's Booker claim, such as it was, has already been resolved by the Eighth Circuit; he may not raise the issue again before this Court. English, 998 F.2d at 612.

To the extent petitioner argues that Booker is retroactive, he simply misstates the law. Neither Blakely nor Booker may be applied retroactively. Never Misses A Shot v. United States, 413 F.3d 781, 783 (8th Cir. 2005); United States v. Stoltz, 149 Fed. Appx. 567, 568-69 (8th Cir. 2005).

C. Crack Disparity Claim is Denied Without Prejudice.

Petitioner's sentence was calculated under the Sentencing Guidelines based on 1,912 grams of crack. He now asks the Court to revisit his sentence based on the Supreme Court's opinion in Kimbrough v. United States, 128 S.Ct. 558, 575 (2007), and Amendments 706 and 711 to the Sentencing Guidelines, both of which address the disparity in sentencing between offenses involving powder cocaine and offenses involving crack cocaine.

The application of these recent changes in the law to petitioner's sentence does not appear to be cognizable under habeas review, and the record is insufficiently developed to allow petitioner to proceed under 28 U.S.C. § 2255. Accordingly, petitioner's motion is denied without prejudice. He is free to renew his request in a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2).

D. Evidentiary Hearing and Certificate of Appealability

Petitioner seeks an evidentiary hearing. A petition under § 2255 may be dismissed without an evidentiary hearing where the petitioner's allegations, accepted as true, would not entitle the

petitioner to relief. Evans, 200 F.3d at 551. Such is the case here. Accepting petitioner's allegations as true, the Court concludes he is entitled to no relief under § 2255. The motion is denied.

The Court has also considered whether it is appropriate to issue a Certificate of Appealability ("COA"). See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997). The Court concludes that no issue raised in this petition is "debatable among reasonable jurists." Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir. 1994) (citing Lozada v. Deeds, 498 U.S. 430, 432 (1991)). Petitioner has not, therefore, made the "substantial showing of the denial of a constitutional right" necessary for the issuance of a COA. 28 U.S.C. § 2253(c)(2).

III. Conclusion

For the foregoing reasons, IT IS ORDERED that:

1. Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [Docket No. 160] is denied. To the extent petitioner raises issues under Kimbrough v. United States, 128 S.Ct. 558 (2007) and Amendments 706 and 711 to the Sentencing Guidelines, the motion is denied without prejudice. Petitioner may renew his request in a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2).

2. Petitioner's motion to expand the record and for an

evidentiary hearing [Docket No. 168] is denied.

3. No certificate of appealability shall issue.

Dated: July 21, 2008

s/ JAMES M. ROSENBAUM
JAMES M. ROSENBAUM
United States District Judge